PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, and Powell, JJ., and Russell and Millette, S.JJ.

LOREN MASON

v.  Record No. 150372

OPINION BY
SENIOR JUSTICE CHARLES S. RUSSELL
May 5, 2016

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal arises from a motion to suppress evidence obtained by police officers following the "Terry stop" of an automobile.

FACTS AND PROCEEDINGS

The material facts are undisputed.  At 2:30 p.m. on March 3, 2012, Officer Willie Richards of the Waverly Police Department was operating stationary radar on the side of Route 460 in the Town of Waverly, Sussex County.  He was accompanied by another officer named Parker.  Richards was watching for traffic speeding down a hill.  He observed a green sedan that passed him.  It attracted his attention only because he observed a dangling object hanging below its rear-view mirror.  He followed it in his cruiser and brought it to a stop.  He thought the dangling object might be in violation of the law.  Code § 46.2-1054 provides, in pertinent part:

> It shall be unlawful for any person to drive a motor vehicle on a highway in the Commonwealth with any object or objects, other than a rear view mirror, sun visor, or other equipment of the motor vehicle approved by the Superintendent, suspended from any part of the motor vehicle in such a manner as to obstruct the driver's clear view of the highway through the windshield, the front side windows, or the rear window, or to alter a passenger-carrying vehicle in such a manner as to obstruct the driver's view through the windshield.

There were two occupants of the green sedan.  The driver was Tony Jarrett and the appellant here, Loren Mason, was a front-seat passenger.  The dangling object was an opaque plastic parking pass for a nearby military facility, approximately 3" by 5" in size, suspended

from the rear-view mirror mounting. Richards asked Jarrett to step out of the car. Jarrett complied and walked to the rear of the car. Richards testified that he intended to charge Jarrett with a seat-belt violation as well as a violation of Code § 46.2-1054 and so advised Jarrett. He asked Jarrett whether he had any weapons on his person and Jarrett said no. He then asked Jarrett if he would consent to a "pat-down" search for weapons and Jarrett gave his consent. The search revealed no weapons but led to the discovery of a bag of marijuana in Jarrett's pocket. Richards detained him for possession of marijuana as well as the two traffic infractions, and read him his Miranda rights.

Meanwhile, Officer Parker asked Mason to step out of the car. He then conducted a pat-down search of Mason, which revealed nothing. Richards testified that Mason would "absolutely" have been free to leave the scene at that point if he had so desired. Richards detected a strong odor of marijuana in the car, searched its interior and found a black backpack in the middle of the rear seat. Neither Jarrett nor Mason admitted ownership of the backpack. Richards opened the backpack and found a large number of individually-wrapped bags of marijuana, a bag containing "Ecstasy" pills, cocaine residue, a box of sandwich bags and several letters that had been written to Mason. Richards then arrested Mason, read him his Miranda rights, and searched him incident to the arrest. The search revealed a cell phone and $3,381 in cash on Mason's person.

Mason was indicted, tried and convicted in the Circuit Court of Sussex County of three felony drug offenses arising from his arrest. He made a pre-trial motion to suppress the evidence obtained as a result of the traffic stop, contending that it was an unconstitutional infringement of his Fourth Amendment rights. The circuit court denied his motion to suppress.

2

Mason appealed to the Court of Appeals, assigning error only to the circuit court's denial of his motion to suppress. The Court of Appeals granted the appeal which was decided by a divided three-judge panel. In a published opinion, Mason v. Commonwealth, 63 Va. App. 587, 760 S.E.2d 831 (2014), the majority ruled that the "facts and circumstances available to the officer at the time of the stop did not support a reasonable suspicion that the driver was violating or about to violate the law," id. at 605, 760 S.E.2d at 840, ordering reversal and remand to the circuit court for a new trial. Id. Sitting en banc, the full court, closely divided, reversed the panel decision and affirmed the judgment of the circuit court. Mason v. Commonwealth, 64 Va. App. 292, 308-09, 767 S.E.2d 726, 735 (2015). We awarded Mason an appeal.

ANALYSIS

When challenging the denial of a motion to suppress evidence on appeal, the defendant bears the burden of establishing that reversible error occurred. Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008). When the defendant contends that the evidence sought to be suppressed was obtained in violation of his Fourth Amendment rights, the standard of review on appeal is de novo. Id. In performing this review, we consider the evidence in the light most favorable to the Commonwealth and accord the Commonwealth the benefit of all inferences fairly deducible from the evidence. Id.

In Terry v. Ohio, 392 U.S. 1, 30 (1968), the Supreme Court held that a police officer may, without violating the Fourth Amendment, make a brief investigatory stop of a person when the officer has a reasonable suspicion, based on objective facts, that criminal activity may be afoot. Such brief investigatory detentions have become known as "Terry stops" and have spawned many appeals, especially in cases where the stop resulted in the discovery of evidence of crimes far different from that which had motivated the officer to make the stop. As we

3

explained in Sidney v. Commonwealth, 280 Va. 517, 522, 702 S.E.2d 124, 127-28 (2010), "[w]hile limited in its purpose and length, an investigative stop . . . such as the traffic stop in this case, constitutes a seizure within the meaning of the Fourth Amendment." See also, e.g., Delaware v. Prouse, 440 U.S. 648, 653 (1979); Harris v. Commonwealth, 276 Va. 689, 694, 668 S.E.2d 141, 144 (2008); Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004). As the United States Supreme Court has stated, "[a] traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." Heien v. North Carolina, 574 U.S. ___, ___, 135 S. Ct. 530, 536 (2014). "[T]o justify this type of seizure, officers need only 'reasonable suspicion'— that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." Id. (quoting Prado Navarette v. California, 572 U.S. ___, ___, 134 S. Ct. 1683, 1688 (2014)). The Court has said that reasonable suspicion to justify an investigative stop of a vehicle must be based upon specific and articulable facts of criminal activity. United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Sokolow, 490 U.S. 1, 7 (1989); Sidney, 280 Va. at 522, 702 S.E.2d at 127; Harris, 276 Va. at 694, 668 S.E.2d at 144; Jackson, 267 Va. at 672, 594 S.E.2d at 598.

In making reasonable-suspicion determinations, reviewing courts must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. Arvizu, 534 U.S. at 273. In addition, case law has resulted in the formulation of rules that inform our inquiry here. First, the facts and circumstances on which the officer relies must have been available to him at the moment of the stop, not discovered thereafter. See Terry, 392 U.S. at 21-22. Second, the officer's subjective thoughts are irrelevant. Robinson v. Commonwealth, 273 Va. 26, 37, 639

4

S.E.2d 217, 223 (2007) (citing Brigham City v. Stuart, 547 U.S. 398, 404, 126 S. Ct. 1943, 1948 (2006)). The Fourth Amendment imposes a standard of objective reasonableness. See Kentucky v. King, 563 U.S. 452, 459 (2011). The test is not what the officer thought, but rather whether the facts and circumstances apparent to him at the time of the stop were such as to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law was occurring or was about to occur. Scott v. United States, 436 U.S. 128, 138 (1978).

For that reason, if the officer making the stop is mistaken as to the applicable law, see Heien, 135 S. Ct. at 539, or has made an error of fact in deciding to make the stop, see id., his mistake is irrelevant if the facts and circumstances at the time of the stop would have been sufficient to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law was occurring or was about to occur.

The standard of objective reasonableness rules out any conclusion reached by an officer based entirely or even in part on an ulterior motive such as personal animus against the subject of the stop or a bias against him based on his appearance, or any subjective factor unrelated to evidence of a violation of the law. Here, the record contains no indication that Richards had any such motive, and Mason makes no such contention.

Third, the objective facts and circumstances available to the officer must be such as to lead a reasonable officer to an articulable suspicion, a conclusion that can be expressed in words sufficient to persuade a reasonable listener to come to a like conclusion. That standard requires far more than an officer's "hunch" or "gut feeling" but far less than actual proof. "Articulable" does not mean "articulated." "A police officer conducting a stop is not required to precisely and individually articulate the facts that added up to suspicion in his mind." United States v. Brown, 232 F.3d 589, 594 (7th Cir. 2000) (internal quotation marks omitted).

5

In the seminal case <u>Terry v. Ohio,</u> an investigative stop was held objectively reasonable where the officer observed no elements of any crime whatever, but only an entirely lawful course of conduct which gave rise to a reasonable suspicion that the defendant was preparing to commit a crime. 392 U.S. at 23, 28. The Supreme Court reached the same result in <u>United States v. Sokolow</u>, 490 U.S. 1 (1989), where the defendant also engaged in a lawful course of conduct that nevertheless led an officer reasonably to conclude that a crime was intended. <u>Id.</u> at 5, 8-11.

In the present case, Mason argues that Officer Richards failed to articulate both facts which the Commonwealth would have to prove in order to establish that there was a violation of Code § 46.2-1054, <u>i.e.,</u> (1) that there was an object suspended from the green sedan's rear-view mirror, and (2) that the object was so placed as to obstruct the driver's clear view of the highway. Mason contends that the officer's failure to articulate the second of these elements of the offense makes it obvious that the officer was unaware of the law's requirements and that he evidently thought the offense consisted solely of driving with a dangling object suspended in the car, regardless of its character or placement.[*]

For the foregoing reasons, Mason's contentions that Officer Richards failed fully to articulate the requirements of the offense and might have misunderstood the law he was trying to

---

[*] Although Officer Richards testified at the suppression hearing that he had made the stop because he observed a dangling object hanging from the car's rear-view mirror, later at that hearing the Commonwealth's Attorney asked him whether the object could obstruct the driver's view. He responded, "It could. Yes ma'am." The record is unclear as to the time the officer reached that conclusion. It could have been based on his observation of the car after he had stopped it, rather than the time he decided to make the stop. In any event, we shall never know what Richards' understanding of the law may have been when he decided to make the stop because he was never asked the question. Instead, he was asked what brought his attention to the vehicle. He responded, "Dangling object on the rearview mirror." He might have been mistaken as Mason contends, but it is equally likely that he fully understood the law's requirements but could not determine whether they were being violated unless he stopped the car to investigate further. We need not speculate as to his state of mind, but will adhere to the standard of objective reasonableness.

enforce are insufficient to show reversible error in the circuit court's ruling on his motion to suppress. We therefore focus on the dispositive question: whether the facts and circumstances apparent to the officer at the time he decided to make the stop were such as to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law was occurring.

Although Code § 46.2-1054 proscribes conduct few might think unlawful, its legislative purpose is far from trivial. When automobiles first appeared on public roads, drivers sat bolt upright on bench seats and looked forward through vertical windshields of flat plate glass. In present-day vehicles, they are seated in more comfortable cushioned seats adjustable in up to six directions to accommodate individual tastes and physical requirements. A driver may assume a semi-reclining position, if desired. At the same time, windshields have become markedly tilted, for streamlining and aesthetic reasons. In many vehicular configurations today, the net effect of these factors may be to reduce the vertical space through which the driver may view the road ahead to a relatively narrow band of glass. Any obstruction of that narrow band of glass can have serious consequences.

On this continent, vehicles drive on the right side of the road while drivers sit on the left side of the vehicle. The rear-view mirror, expressly permitted by the statute, is placed behind the windshield's center, partially obstructing the driver's view. Any opaque object suspended below it will probably obstruct the view to the driver's right to some extent. Any obstruction in that area can lead to tragic consequences when, for example, another vehicle backs out of a shrubbery-screened driveway ahead or a child darts out from between parked cars into a residential street in pursuit of a ball or a runaway pet. The legislative purpose underlying the statute is clearly to lessen such dangers.

Police officers charged with enforcement of the statute are confronted with a demanding task. Some dangling objects may turn out not to obstruct the driver's clear view of the highway; others will. The officer's dilemma consists in the virtual impossibility of determining to which category the dangling object belongs while the car containing it is in motion. The offense exists only when a person "drive[s] a motor vehicle on a highway." Code § 46.2-1054.

In the present case, the trial court, having examined the evidence, decided that an objective officer in the position Officer Richards occupied when deciding to make the stop, could reasonably conclude that the object dangling from the rear-view mirror might violate Code § 46.2-1064, justifying an investigatory stop.

In consideration of the totality of the circumstances, we find further support for the trial court's decision. Here, Officer Richards testified at the suppression hearing that he was in a stationary position along the highway and watched the green sedan as it came down the hill toward him to see whether it was speeding. He testified, "when it got a little closer, I saw the tag on the rear-view mirror. . . . I can't say it was moving back and forth, just that I saw it when it came by." A reasonable person could readily conclude from the fact that the tag was sufficiently prominent to attract the officer's attention during the brief moments that it passed through his field of view that it might have violated the statute.

CONCLUSION

We conclude that the objective facts and circumstances presented by the Commonwealth were such as to create a reasonable suspicion that a violation of the law was occurring, justifying an investigatory stop of the vehicle in which Mason was a passenger and that his Fourth

8

Amendment rights were not violated thereby. Accordingly we will affirm the judgment of the Court of Appeals.

Affirmed.

JUSTICE POWELL, with whom SENIOR JUSTICE MILLETTE joins, dissenting.

According to the majority, Officer Richards' clear misinterpretation of the law "is irrelevant if the facts and circumstances at the time of the stop would have been sufficient to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law was occurring or was about to occur." Stated another way, the majority today holds that an officer's mistake of law may be disregarded if another, hypothetical officer would not have made the same mistake. As I believe that the United States Supreme Court has explicitly held that an officer's mistake of law must be considered, especially where it serves as the basis for initiating an investigatory stop, I must respectfully dissent.

It is undisputed that, at a minimum, in order to initiate a traffic stop like the one at issue in the present case, an officer must have a reasonable suspicion that a crime is being committed or is about to be committed. The difficulty lies in determining what, exactly, the term "reasonable suspicion" encompasses. Recognizing that "the concept of reasonable suspicion is somewhat abstract," the United States Supreme Court has avoided establishing a rigid definition of the term. United States v. Arvizu, 534 U.S. 266, 274 (2002) (citing Ornelas v. United States, 517 U.S. 690, 696 (1996)). Instead, the Supreme Court has explained that, in reviewing reasonable suspicion determinations, courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for

9

suspecting legal wrongdoing." Id. at 273 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

In cases involving whether reasonable suspicion exists to initiate a warrantless stop, the Supreme Court has consistently examined whether the specific officer involved had a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (citation omitted). In the seminal case of Terry v. Ohio, 392 U.S. 1, 30 (1968), the Supreme Court explained that reasonable suspicion exists "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." (Emphasis added.) Along these same lines, the Supreme Court has held that the Fourth Amendment is violated when an officer is unable to point to specific facts that served as the basis of his suspicions. See Brown v. Texas, 443 U.S. 47, 52 (1979).

The Supreme Court has further made it clear that "[r]easonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law." Heien v. North Carolina, 574 U.S. ___, ___, 135 S. Ct. 530, 536 (2014). Implicit in this statement is the principle that a detaining officer's understanding of the facts and law at the time he initiates the stop is not only highly relevant to the determination of reasonable suspicion, but it is also part of the "totality of the circumstances." Thus, an officer's understanding of the facts and relevant law is anything but irrelevant.

It is for this very reason that "[a] court sitting to determine the existence of reasonable suspicion must require the [law enforcement officer] to articulate the factors leading to that conclusion." Sokolow, 490 U.S. at 10 (emphasis added); see also Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000) ("The officer must be able to articulate more than an inchoate and

10

unparticularized suspicion or 'hunch' of criminal activity.") (emphasis added) (some internal quotation marks omitted); United States v. Williams, 808 F.3d 238, 253 (4th Cir. 2015) ("[T]he prosecution is obliged to present evidence articulating reasonable suspicion."). "Were it otherwise, an experienced police officer's recitation of some facts, followed simply by a legal catchphrase, would allow the infringement of individual rights with impunity." Williams, 808 F.3d at 253. Similarly, absent such articulation, a court could not determine if the officer had a particularized and objective basis for suspecting illegal activity.

Additionally, according to the majority, an officer's understanding of the facts and relevant law are subjective and, therefore, cannot be considered. Instead, the majority holds that the proper analysis requires a court to substitute the detaining officer's articulated basis for that of a hypothetical, reasonably objective officer. In taking this position, the majority relies on Scott v. United States, 436 U.S. 128 (1978), a case that is, in my opinion, inapposite to the present case.

The issue in Scott was whether evidence secured under a warrant should be suppressed due to the government's failure to comply with the minimization requirement for interception of communications under a wiretap authorized pursuant to 18 U.S.C. § 2518(5). Recognizing that a statutory violation could implicate the Fourth Amendment, the Supreme Court analyzed the government's application of the statute by applying Fourth Amendment principles. In so doing, the Supreme Court stated that, "in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him" without consideration of the officer's subjective intent or motivation for taking those actions. Id. at 137-38 (emphasis added). The majority, however, has

11

shifted the focus from an objective assessment of the officer's actions to an objective assessment of the surrounding facts and circumstances surrounding the officer's actions.

In my opinion, Heien rebuts the majority's approach and decides this case. In Heien, an officer initiated a traffic stop based on the mistaken belief that driving with a faulty brake light was a statutory violation in North Carolina. 135 S. Ct. at 535. On appeal, the defendant argued that the officer's mistake of law rendered the traffic stop an unreasonable seizure under the Fourth Amendment. Id. The Supreme Court held that an investigatory stop based on a mistake of law can be valid, provided the mistake of law is objectively reasonable. Id. at 539-40. Notably, in analyzing the issue, the Supreme Court did not look to whether a reasonably objective officer would have made the same mistake; rather it looked to the statute itself to determine whether the detaining officer's interpretation was reasonable. Indeed, as Justice Kagan explained,

> A court tasked with deciding whether an officer's mistake of law can support a seizure . . . faces a straightforward question of statutory construction. If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not.

Id. at 541 (J. Kagan, concurring).

Turning to the merits of the present case, it is important to define the precise issue before the Court. Mason's appeal is based, in part, on the notion that the underlying traffic stop was invalid because Officer Richards initiated the traffic stop due to an unreasonable mistake of law. Applying the logic of Heien to these facts, it is clear that Officer Richards' stated reason for initiating the stop indicates that he initiated the stop based on a mistake of law. The record

12

clearly demonstrates that Officer Richards misunderstood[1] Code § 46.2-1054, as it is apparent

that Officer Richards believed that Code § 46.2-1054 prohibited any object dangling from a rear-

view mirror, regardless of its potential to obstruct the driver's view.  Code § 46.2-1054 prohibits

driving in a motor vehicle with "any object or objects . . . suspended from any part of the motor

vehicle in such a manner as to obstruct the driver's clear view of the highway through the

windshield."  However, at trial, Officer Richards' stated that he initiated the traffic stop because

of a "[d]angling object on the rearview mirror."  At no point did Officer Richards indicate that he

believed that the parking tag obstructed Jarrett's view of the highway or that he initiated the stop

to investigate whether the parking tag obstructed Jarrett's view.[2]  Given that there is no

prohibition against objects dangling from the rearview mirror that do not obstruct the driver's

view of the highway, it is clear that Officer Richards either misunderstood or misapplied

Code § 46.2-1054.

[1] The majority points out that "we shall never know what [Officer] Richards' understanding of the law may have been when he decided to make the stop because he was never asked the question."  I do not disagree with this statement.  However, as Heien demonstrates, the majority's concern is unfounded.  Notably, the Supreme Court was in the same position when it decided Heien, because no one had asked the officer what his understanding of the law was at the time he initiated the traffic stop, just as no one asked Officer Richards in the present case. Rather than speculate about what the officer did or did not know about the law, the Supreme Court looked no further than the officer's stated reason for initiating the traffic stop.  In my opinion, this Court should similarly look no further than Officer Richards' stated reason for initiating the traffic stop.

[2] At the suppression hearing, the Commonwealth did not ask Officer Richards whether the parking tag could obstruct the driver's view.  Had the Commonwealth actually asked this question, Officer Richards' affirmative response would have allowed for the implication that he believed at the time of the stop that the parking tag could have obstructed Jarrett's view.  The actual question asked was, "you can't see through [the parking tag], so it could obstruct a driver's view?"  (Emphasis added.)  In my opinion, the difference is subtle, but significant.  Any opaque object can potentially obstruct a driver's view; a violation of Code § 46.2-1054, however, requires evidence that the dangling object obstruct the driver's view.  It is further worth noting that Officer Richards was also asked by the Commonwealth if anything about the parking tag caused him concern for the driver.  In response, Officer Richards stated, "Just that there was a dangling object."

13

Once it is determined that a traffic stop was initiated based on a mistake of law, <u>Heien</u> instructs that the next step is to determine whether the mistake of law was reasonable. Code § 46.2-1054 is not ambiguous. The statute clearly establishes that it does not prohibit all objects suspended from a rearview mirror, only those that obstruct the driver's view. There are no competing interpretations of the statute that do not include such a requirement. Furthermore, unlike the statute in <u>Heien</u>, the Court of Appeals has, on at least one occasion, interpreted Code § 46.2-1054. <u>See</u> <u>Commonwealth v. Bryant</u>, Record No. 0076-04-1, 2004 Va. App. LEXIS 283 (June 15, 2004) (unpublished). Thus, it cannot be said that Officer Richards' mistake of law was reasonable.

Therefore, I would find that Officer Richards was not justified in initiating an investigatory traffic stop.[3] Accordingly, I would reverse the decision of the Court of Appeals and direct that it remand the matter to the trial court.

---

[3] I take no position as to whether an officer with a proper understanding of the law would have reasonable suspicion to initiate a traffic stop under the facts of the present case. Nor am I saying that a dangling parking tag like the one at issue in the present case cannot be the basis for a legitimate traffic stop. My position is simply that <u>Heien</u> applies to the present case and, under <u>Heien</u>, an officer who initiates a traffic stop based on an unreasonable mistake of law lacks reasonable suspicion and violates the Fourth Amendment.