UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Beales, Alston and Senior Judge Haley
Argued by teleconference


COMMONWEALTH OF VIRGINIA

v.      Record No. 0376-16-2

STEPHEN ALLEN DONALD AND
  DEOCLECIO RONAN SAMPAIO

MEMORANDUM OPINION* BY
JUDGE ROSSIE D. ALSTON, JR.
AUGUST 23, 2016


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Sarah L. Deneke, Judge

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellant.

Christopher M. Reyes (Spencer, Meyer, Koch & Cornick, P.L.C.;
on brief), for appellee Stephen Allen Donald.

Timothy W. Barbrow for appellee Deoclecio Ronan Sampaid.


Pursuant to Code § 19.2-398(A)(2), the Commonwealth appeals the trial court's decision

to grant appellees Stephen Allen Donald's and Deoclecio Ronan Sampaio's motions to suppress

the Commonwealth's evidence obtained after they were stopped for an alleged violation of Code

§ 46.2-923, the jaywalking statute. The Commonwealth argues that the trial court erred in ruling

that pedestrians are not required by Code § 46.2-923 to cross a highway at an intersection

wherever possible, and granting appellees' motions to suppress the evidence on that basis. We

disagree and therefore, affirm the trial court's decision to grant appellees' motions to suppress.

---

*Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. Background

On October 19, 2015, appellees were indicted on one charge each of gang participation in violation of Code § 18.2-46.2 and possession of a firearm by a convicted felon in violation of Code § 18.2-308.2. The indictments stemmed from their arrest on June 23, 2015, after they were stopped when they allegedly jaywalked across U.S. Highway 1 in Spotsylvania County. That day, Spotsylvania County Sheriff's Deputies Harris and Tillman saw appellees walking northbound on the southbound side of Jefferson Davis Highway (U.S. Highway 1) near the Motel 6 located at 5308 Jefferson Davis Highway in Spotsylvania County. The deputies were running interdiction in the high-crime area and driving southbound on Jefferson Davis Highway at the time. Harris and Tillman initially took interest in appellees as they passed, in part because of their facial tattoos.[1] The deputies then saw appellees take a few steps into the street, preparing to cross. At that time, the deputies crested a slight hill near the Motel 6 parking lot and lost sight of appellees for about thirty seconds. Harris and Tillman then turned around and headed back to intercept appellees. Appellees had crossed from the southbound to the northbound side of the street, where there was neither an intersection nor marked crosswalk, and entered the Motel 6 parking lot. The nearest intersection was approximately one-tenth of a mile away at Mine Road, and the stoplight was visible from where appellees crossed U.S. Highway 1. There is not, however, a crosswalk at the Mine Road intersection.

The deputies located appellees in the parking lot of the Motel 6, asked appellees to come over, and appellees complied. Harris and Tillman told appellees that they had stopped them because of the manner in which they crossed Jefferson Davis Highway. The deputies asked

_____

[1] There is nothing in the record to suggest that the facial tattoos in and of themselves suggested any criminal activity. In its ruling, the trial court noted that it didn't know "if there's anything in those tattoos that indicate gangs or prior prison sentences or whether it's just that people with a lot of facial tattoos are somebody that the police want to talk to."

appellees for their names and dates of birth, which they provided. After running checks on appellees, Harris and Tillman discovered that they each had outstanding warrants. The deputies then arrested appellees and found a Glock 17C firearm in Donald's backpack. Appellees were both charged with possession of a gun by a convicted felon and participation in gang activity. Neither was cited for jaywalking.

Appellees moved to suppress and exclude evidence obtained as a result of their unlawful detention, the subsequent unlawful search of Donald's backpack, and verification of appellees' identities since they were not known by Harris and Tillman at the time of the stop. Making particular reference to the framework of the jaywalking statute, appellees argued in their motions that there were no signs restricting them from crossing U.S. Highway 1 at the location where they did on June 23, 2015, and that there was no crosswalk in the area where they crossed. Thus, appellees argued that there was no reasonable suspicion of any ongoing criminal activity justifying law enforcement to seize appellees, detain them, search Donald's backpack, and elicit incriminating statements from Sampaio.

The trial court held a hearing on appellees' motions to suppress on March 1, 2016. The Commonwealth proffered its evidence as described above without objection. Photographs of U.S. Highway 1, the Motel 6 parking lot, and the general area were introduced into evidence without objection. The Commonwealth noted that near where appellees crossed the street, there is a slight crest over which the deputies drove, which makes it difficult for pedestrians to be seen by northbound traffic. There had been a number of traffic incidents where pedestrians attempting to cross the street near where appellees did were struck by vehicles. Further, the Commonwealth highlighted the fact that the intersection at Jefferson Davis Highway and Mine Road/Hood Drive is visible from where appellees crossed. Deputy Tillman briefly testified and stated that he did not observe appellees interfere with any traffic at the time he saw them begin to

- 3 -

cross U.S. Highway 1. The Commonwealth argued that because there was an intersection in sight of where appellees crossed U.S. Highway 1 and appellees did not cross at the intersection, Harris and Tillman had reason to believe that appellees violated the jaywalking statute.

After considering the evidence and arguments presented, the trial court ruled that the deputies did not have reasonable articulable suspicion to stop appellees. The trial court stated that it didn't "think there's any question" that the deputies wanted to talk to appellees because of their facial tattoos. The court went on to say that "the situation is very clear, officers driving down the road see two guys walking down the road that they really want to stop and talk to, but they don't have any reason to stop and talk to them. And so they continue on past them." The trial court went on to say that it didn't "think there's any question that [the reason for the stop was] a pretext. There's no question that the officers didn't really want to tell them to be careful crossing the road. They wanted to talk to these two guys, but that's okay too." While the trial court pointed out that while pretextual stops have been upheld by courts, there still has to be a valid reason that justifies the stop. The court found that

> There is absolutely no testimony that there was any interference in traffic, that there was any malicious or careless interference with the orderly passage of vehicles. The only violation, if at all, that the officers could even begin to discuss with these individuals is crossing not at a crosswalk or an intersection, and that's not a violation of the law, plain and simple.

The trial court held that it was not reasonable for the officers to make a stop purely based on appellees failing to cross at an intersection when there was no interference with traffic. Most significantly, the trial court also concluded that from the facts presented there was no reasonable interpretation of Code § 46.2-923 which would have given Harris and Tillman reasonable suspicion to stop appellees for crossing where they did.

## II. Analysis

"'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed *de novo* on appeal." McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). In reviewing the issues on appeal, this Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699).

The Supreme Court of the United States has held that "a police officer may, without violating the Fourth Amendment, make a brief investigatory stop of a person when the officer has reasonable suspicion, based on objective facts, that criminal activity may be afoot." Mason v. Commonwealth, 291 Va. 362, 367, 786 S.E.2d 148, 151 (2016) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). "While limited in its purpose and length, an investigative stop . . . constitutes a seizure within the meaning of the Fourth Amendment." Id. (quoting Sidney v. Commonwealth, 280 Va. 517, 522, 702 S.E.2d 124, 127-28 (2010)). "[T]o justify this type of seizure, officers need only 'reasonable suspicion' – that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." Heien v. North Carolina, 135 S. Ct. 530, 536 (2014) (quoting Navarette v. California, 134 S. Ct. 1683, 1688 (2014)). "Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground." Id. "The limit is that 'the mistakes must be those of reasonable men.'" Id. (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)).

Code § 46.2-923 provides, in relevant part:

> When crossing highways, pedestrians shall not carelessly or maliciously interfere with the orderly passage of vehicles. They shall cross, wherever possible, only at intersections or marked crosswalks. Where intersections contain no marked crosswalks, pedestrians shall not be guilty of negligence as a matter of law for crossing at any such intersection or between intersections when crossing by the most direct route.

A violation of Code § 46.2-923 is a misdemeanor. See Code § 46.2-937. "Under well-established principles, an issue of statutory interpretation is a pure question of law which we review de novo." JSR Mech., Inc. v. Aireco Supply, Inc., 291 Va. 377, 383, 786 S.E.2d 144, 146 (2016) (quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)). "When the language of a statute is unambiguous, [this Court] is bound by its plain meaning." Id. "In interpreting [a] statute, courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result." Id. (quoting Baker v. Commonwealth, 284 Va. 572, 576, 733 S.E.2d 642, 644 (2012)).

Neither party argues, nor do we find that Code § 46.2-923 is ambiguous. From the plain language of the statute, there are two ways in which a person may violate its provisions: By carelessly or maliciously interfering with the orderly passage of vehicles when crossing a highway, or by failing to cross at an intersection or marked crosswalk where it is possible to do so. The last sentence of Code § 46.2-923 has direct application in this case as the undisputed facts show that there was an intersection approximately a tenth of a mile from where appellees crossed U.S. Highway 1, however the intersection did not have a crosswalk. Therefore, according to Code § 46.2-923, appellees were not negligent in crossing between intersections, so

long as the route they took was the most direct. The Commonwealth does not challenge this factual circumstance.[2]

The ultimate question before us is whether Harris and Tillman had reasonable suspicion that appellees violated Code § 46.2-923 when they witnessed appellees take a few steps onto U.S. Highway 1 at neither a crosswalk nor an intersection, based on an objectively reasonable (if incorrect) interpretation of Code § 46.2-923.[3] See Heien, 135 S. Ct. at 536. The trial court made clear and explicit findings that Harris and Tillman did not have reasonable suspicion to stop appellees based on a suspected pedestrian traffic violation.[4] The trial court stated "simply crossing not at an intersection is not a violation of the law, and so an officer – it's not reasonable

---

[2] Neither this Court nor the Supreme Court has interpreted Code § 46.2-923 outside of the civil context. In Schutt v. Brockwell, 214 Va. 38, 196 S.E.2d 921 (1973), the Supreme Court held in part that the plaintiff, who was struck by a vehicle when crossing between intersections and seeking damages, was not in violation of Code § 46.1-230(a) because there were no marked crosswalks for pedestrians in the area where he crossed the highway. Id. at 40, 196 S.E.2d at 924. The predecessor statute to Code § 46.2-923, Code § 46.1-230(a) provided in part that pedestrians "shall cross wherever possible only at intersections, but where intersections of streets contain no marked crosswalks pedestrians shall not be guilty of negligence as a matter of law for failure to cross at said intersection."

[3] Appellees each raise preservation issues, albeit on distinct grounds. We find that the Commonwealth sufficiently preserved its appeal because it stated its grounds for its disagreement with the trial court's interpretation of Code § 46.2-923 in its argument against appellees' motions to suppress. Further, though the assignment of error does not specifically state the phrase "reasonable suspicion," it clearly challenges the trial court's ruling on appellees' motions to suppress in their entirety. Therefore, the assignment of error sufficiently encapsulates a challenge to the trial court's ruling regarding Code § 46.2-923 and its subsequent determination that the officers did not have reasonable suspicion to stop appellees. Therefore, we address the merits of the Commonwealth's appeal.

[4] Specifically, the trial court stated that it did not "think there's any question that [Harris and Tillman stopping appellees for a suspected violation of Code § 46.2-923 was a] pretext." While pretextual stops have been upheld by courts as valid reasons that support constitutionally permissible stops of individuals, we need not address the significance or legality of the pretextual nature of the stop as the trial court found that there was no *factual* justification for the officers to stop appellees in this case.

is what I will say for an officer to make a stop purely on those grounds."[5] We will not disturb the trial court's factual assessment of the circumstances regarding where and why Harris and Tillman stopped appellees. Further, because we find Code § 46.2-923 to be clear and unambiguous; we cannot conclude that the trial court made an error of law in its assessment that Harris and Tillman did not have reasonable suspicion to stop appellees for a suspected jaywalking violation. Therefore, we affirm the trial court's decision to grant appellees' motions to suppress.[6]

Affirmed.

---

[5] We also note that to the extent the Commonwealth argues that the second sentence in Code § 46.2-923 applies because it was "possible" for appellees to cross the highway at the Mine Road intersection approximately one-tenth of a mile away, we disagree that would be either a reasonable expectation of pedestrians or necessary to comply with the statute. It is not reasonable for pedestrians to be expected to walk one-tenth of a mile out of the way to cross at a congested intersection with no crosswalk where approximately twenty lanes of traffic meet, and then walk one-tenth of a mile back to their destination. Such inconvenience and risk is not required by the statute and is unreasonable.

[6] The Commonwealth argues on appeal that Heien applies in the present case, however the Commonwealth did not cite Heien to the trial court, and consequently, the trial court never had an opportunity to rule on its applicability to the facts of this case. Therefore, we decline to do so on appeal.