COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges O'Brien, Russell and Retired Judge Bumgardner[*]
Argued at Norfolk, Virginia


JAMES EDWARD BELLAMY, JR.

                                                    MEMORANDUM OPINION[**] BY
v.        Record No. 0496-17-1                      JUDGE WESLEY G. RUSSELL, JR.
                                                            JULY 24, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
William R. Savage, III, Judge[1]

Erik A. Mussoni, Assistant Public Defender, for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


       James Edward Bellamy, Jr. was convicted in a bench trial of possession of heroin with the

intent to distribute in violation of Code § 18.2-248 and driving on a suspended license in

violation of Code § 46.2-301.[2]  Appellant contends that the trial court erred in denying his

motion to suppress evidence obtained during a search of his vehicle.  For the reasons that follow,

we disagree and affirm the judgment of the trial court.

_____

       [*] Judge Bumgardner participated in the hearing and decision of this case in his capacity
as a senior judge of this Court prior to July 1, 2018 and thereafter by designation pursuant to
Code § 17.1-400(D).

       [**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] The final order of conviction was entered by Judge Savage, but the ruling on the motion
to suppress that gives rise to this appeal was made by Judge Randall D. Smith.

       [2] Appellant initially sought to appeal both convictions; he subsequently withdrew his
appeal of his conviction for violating Code § 46.2-301.

BACKGROUND

In reviewing a trial court's denial of a motion to suppress, "we consider the evidence in the light most favorable to the Commonwealth and accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Mason v. Commonwealth, 291 Va. 362, 367, 786 S.E.2d 148, 151 (2016). So viewed, the evidence establishes that, at approximately 1:30 in the afternoon on November 21, 2015, Office Quinones was on patrol in his marked police vehicle in Chesapeake. He observed the vehicle Bellamy was driving traveling in the opposite direction with a rejected inspection sticker. Quinones executed a U-turn so that he could pursue the vehicle. Quinones followed the vehicle and observed Bellamy steadily increasing his speed in an apparent attempt to distance himself from Quinones.[3] Quinones characterized Bellamy's driving as "trying to avoid me[.]" After Bellamy made what Quinones characterized as two "hurried" left turns and one "hurried" right turn without stopping at the intersections, Quinones was able to catch up with appellant and initiate a traffic stop.

When Quinones activated his emergency lights, appellant pulled over. As Quinones approached the vehicle, he noticed that neither appellant nor his passenger were wearing seatbelts. Quinones observed appellant breathing heavily, "a nervous breathing," and sweating. Quinones found the sweating particularly noteworthy given that it was late November.

Bellamy immediately provided Quinones with his date of birth and Social Security number and advised Quinones that his driver's license was suspended. Quinones explained that "[t]he passenger was also breathing heavily, which led me to believe that there was more [going on] than a suspended license because [appellant] was so upfront with it."

---

[3] Quinones testified that, after making the U-turn, he pressed his accelerator to "the floor." Despite this, Bellamy's vehicle initially was pulling away from Quinones.

- 2 -

Using the identifying information Bellamy had provided, Quinones conducted both a DMV records check and an arrest history search. The DMV records check revealed that Bellamy's license had been suspended. The arrest history search revealed that Bellamy previously had been arrested multiple times for narcotics offenses, including possession and distribution offenses.

Quinones characterized the neighborhood as a "high-drug, high-crime" area. He routinely patrolled the area and estimated making between ten to fifteen arrests in the area a month, including arrests for drug offenses.

Based on all the information he observed, Quinones called for a K-9 unit while he was running the information on appellant and his passenger. After calling for a K-9 unit, Quinones began writing summonses for the various infractions he had observed. Quinones was still writing the summonses when the K-9 unit arrived. The K-9 officer asked Quinones to assist in explaining the dog sniff process to Bellamy and his passenger. Quinones ceased writing the summonses and assisted the K-9 officer as requested.

The drug dog alerted, leading Quinones to search the vehicle. Quinones discovered, among other things, heroin, 100 empty plastic capsules in a bag, and a knife coated with white powder.[4] Quinones did not finish writing the summonses because Bellamy was transported to the local jail, allowing Quinones to have a magistrate issue the necessary charging documents.

Bellamy moved to suppress the evidence that Quinones had discovered in his search of the car. Conceding that the initial stop of the vehicle was justified, Bellamy, citing Rodriguez v. United States, 135 S. Ct. 1609 (2015), argued that the legitimate traffic stop was impermissibly

---

[4] At trial, an expert in the use, packaging, and distribution of narcotics in the City of Chesapeake opined that the evidence recovered from appellant's vehicle was inconsistent with personal use of heroin. On appeal, Bellamy does not contest that the evidence presented at trial was sufficient to support his conviction.

elongated to wait for the drug dog because it was not supported by independent reasonable, articulable suspicion of criminal activity apart from the traffic offenses. The Commonwealth conceded that the traffic stop had been elongated by the wait for and use of the drug dog, but argued that, when Quinones requested the drug dog, he had independent reasonable, articulable suspicion of criminal activity beyond the traffic offenses, and therefore, the continued detention did not violate the Fourth Amendment.

In the proceedings below, the parties correctly agreed that, under Rodriguez, a police officer may investigate other things during a valid traffic stop, but "he may not do so in a way that prolongs the stop, *absent the reasonable suspicion ordinarily demanded to justify detaining an individual*." 135 S. Ct. at 1615 (emphasis added). Accordingly, the question before the trial court was limited to whether Quinones had reasonable, articulable suspicion of additional criminal activity to justify the continued detention of Bellamy.

Crediting Quinones' testimony and the inferences he drew from his observations, the trial court found that there was sufficient suspicion to continue the detention of Bellamy to allow for the arrival and use of the drug dog. Accordingly, the trial court denied the motion to suppress.

Bellamy was found guilty of possession of heroin with the intent to distribute at his subsequent trial and now appeals. He argues that the trial court erred in denying his motion to suppress.

ANALYSIS

In the proceedings below, Bellamy conceded that the initial traffic stop was proper, and the Commonwealth conceded that Quinones' decision to involve the drug dog elongated the detention beyond the time necessary for Quinones to complete the traffic stop. Accordingly, the question on

- 4 -

appeal is whether independent reasonable, articulable suspicion existed to justify the continued investigatory detention of Bellamy separate and apart from the traffic offenses.[5]

Whether sufficient reasonable, articulable suspicion to detain a person exists presents a mixed question of law and fact. Lawson v. Commonwealth, 55 Va. App. 549, 554, 687 S.E.2d 94, 96 (2010). In resolving such questions, "we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citation omitted).

Difficult to define in the abstract, reasonable, articulable suspicion exists when "detaining officers . . . have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). "Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." Bland v. Commonwealth, 66 Va. App. 405, 413, 785 S.E.2d 798, 801-02 (2016) (internal quotation marks and citations omitted). It "can be established with information that is different in quantity or content than that required to establish probable cause . . . [and] from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990).

In determining whether reasonable suspicion exists, a court's review must be "based on an assessment of the totality of the circumstances." Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008). It is an objective question that does not turn on the subjective thoughts of an individual officer or detective, Mason, 291 Va. at 368, 786 S.E.2d at 151;

---

[5] Bellamy does not contest that, once the drug dog alerted, the search of the vehicle was justified.

however, the standard "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting Cortez, 449 U.S. at 418).

Quinones identified several factors that, when viewed in the aggregate, supported a finding of reasonable suspicion. First, Quinones reasonably could conclude that Bellamy's driving, which included increasing his speed and making "hurried" turns in a pattern that suggested evasion as opposed to traveling to a destination, represented an attempt "to avoid me[.]"[6] Such evasive behavior has been recognized as a fact that, when combined with others, can support a finding of reasonable suspicion. See, e.g., Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (recognizing that "evasive behavior is a pertinent factor in determining reasonable suspicion").

Next, Bellamy *and* his passenger both exhibited signs of extreme nervousness, including heavy breathing and sweating despite it being late November.[7] Courts long have recognized that indications of nervousness are factors to consider in determining whether reasonable suspicion exists. Id. (recognizing that "nervous . . . behavior is a pertinent factor in determining reasonable suspicion").

---

[6] Bellamy argues that the driving pattern described did not support a conclusion that he was "evasive." However, the trial court credited Quinones' testimony, which included the observation that the driving pattern was designed "to avoid" Quinones. Under the facts found below, the avoidance described fairly can be described as evasive.

[7] Bellamy argues that his nervousness could be explained by the fact that Quinones had pulled him over and Bellamy knew that he had committed offenses, i.e., driving on a suspended license and driving a vehicle with a rejection sticker for a failed inspection. Although potentially true in the abstract, it does not explain the passenger's nervousness, which caused Quinones to believe "that there was more [going on] than a suspended license . . . ."

Quinones testified that he was familiar with the area in which the encounter occurred and identified it as a "high-drug, high-crime" area. The fact that an area is known to law enforcement as a location where criminal activity often occurs also has been recognized as a fact supporting a finding of reasonable suspicion. See, e.g., Walker v. Commonwealth, 42 Va. App. 782, 791, 595 S.E.2d 30, 34 (2004).

Bellamy's criminal history also supported reasonable suspicion. The standard record and history check Quinones performed revealed that Bellamy had multiple arrests for drug offenses, including both possession and distribution. Such information is a factor to consider in determining whether reasonable suspicion exists. See, e.g., Commonwealth v. Smith, 281 Va. 582, 591, 709 S.E.2d 139, 143 (2011) (considering historical information learned from police records system check can support an officer's reasonable suspicion).

Bellamy contends that all of these factors, whether viewed individually or in their totality, potentially have innocent explanations and are insufficient to support reasonable suspicion. It is, of course, true that these factors, whether viewed in isolation or collectively, did not demonstrate conclusively that Bellamy was engaged in criminal conduct independent of the traffic offenses for which he initially was stopped. It also may be true that all of these factors do not establish that it was probable that Bellamy was engaged in criminal activity apart from the traffic offenses for which he was stopped. The reasonable, articulable suspicion standard, however, does not demand that there be no innocent explanations for the facts observed, Morris v. City of Va. Beach, 58 Va. App. 173, 183, 707 S.E.2d 479, 483 (2011), or even that illicit conduct be the most likely explanation for what an officer learns or observes, Shifflett v. Commonwealth, 58 Va. App. 732, 736, 716 S.E.2d 132, 134 (2011) (recognizing that reasonable suspicion "requires only a moderate chance of finding evidence of wrongdoing" (internal quotation marks and citation omitted)).

Here, although there are potential innocent explanations for much of what Quinones learned and observed, the totality of what he learned and observed supported an objective law enforcement official having "a reasonable suspicion . . . that criminal activity *may* be afoot." Mason, 291 Va. at 367, 786 S.E.2d at 151 (emphasis added). Accordingly, the circuit court did not err in concluding that the continued detention of Bellamy was supported by reasonable suspicion.

CONCLUSION

For the reasons stated above, the evidence established sufficient reasonable suspicion of criminal activity to allow Quinones to detain Bellamy long enough to allow the drug dog to confirm or allay that suspicion. Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>