# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, AtLee and Chaney
Argued at Norfolk, Virginia


STACY TYRONE DAVIS, JR.

MEMORANDUM OPINION* BY
v.      Record No. 0578-21-1        JUDGE RICHARD Y. ATLEE, JR.
MAY 17, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
John W. Brown, Judge[1]

Erik A. Mussoni, Assistant Public Defender, for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring,[2] Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Chesapeake ("trial court") convicted

appellant Stacy Tyrone Davis, Jr. of possession of a firearm by a convicted violent felon, in

violation of Code § 18.2-308.2, and carrying a concealed weapon, in violation of Code § 18.2-308.

By final order entered June 3, 2021, the trial court sentenced Davis to five years in prison on the

possession of a firearm charge and twelve months in jail on the concealed weapon charge, with

twelve months suspended. On appeal, Davis asserts the trial court erred in overruling his motion to

suppress the evidence. Finding no error, we affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge John W. Brown presided over trial and signed the final sentencing order. The
Honorable Stephen J. Telfeyan presided over the hearing on Davis's motion to suppress.

[2] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

# I. BACKGROUND

In accordance with familiar principles of appellate review, the facts are recited in the light most favorable to the Commonwealth, as the prevailing party below. *Lambert v. Commonwealth*, 298 Va. 510, 512 (2020). Moreover, "[i]n ruling on the propriety of a trial court's decision on a motion to suppress, the appellate court considers the evidence introduced at the suppression hearing and at trial." *Hairston v. Commonwealth*, 67 Va. App. 552, 557 n.1 (2017).

At 1:45 a.m. on November 3, 2019, City of Chesapeake Police Officers Smith and Henry were dispatched to a single motor vehicle accident on a residential street. While the officers were investigating the accident, they noticed another vehicle nearby parked in the middle of the road with its lights on and the engine running. The passenger side door was cracked open. The officers approached the car to check on the driver and saw Davis reclined in the driver's seat, sleeping. Smith then went around to the passenger side of the car, reached inside through the passenger side door and, for safety reasons, turned off the ignition.

The officers woke Davis and asked where he was coming from. Davis "seemed real lethargic," had "[b]loodshot watery eyes[,] and his speech was slurred," so Henry asked Davis to step out of the vehicle to see if he was "okay to drive." Based on his experience, Henry believed Davis was intoxicated. When asked, Davis initially responded that he had not been drinking, but then stated he did not say he had *not* been drinking. As Davis stepped out of the car, Smith saw the "rear butt, where the handle [is,]" of a handgun sticking out of Davis's pocket. Smith alerted Henry to the presence of the gun. The officers placed Davis in handcuffs and checked his criminal history. They learned that Davis was a felon, so the officers arrested him for possessing a firearm as a convicted felon.

Davis filed a pre-trial motion to suppress the evidence obtained during the stop. At the suppression hearing, Davis asserted that the trial court should grant his motion because the officers did not read him *Miranda*[3] warnings before questioning him at the scene. Davis argued this was not a consensual encounter or a traffic stop and that there was no reasonable suspicion that he was involved in criminal activity when the officers "came over and they blocked both sides of his car, cut the car off, took the key out, told him he couldn't answer his phone, asked him questions, and then told him to get out of the vehicle." According to Davis, the encounter with the officers was the functional equivalent of a custodial arrest for which the officers lacked probable cause until they questioned him unlawfully. Thus, Davis asked the trial court to suppress the firearm as "fruit of the poisonous tree."

In a written opinion, the trial court denied Davis's motion, finding that "the officers conducted a valid stop and asked the defendant no questions related to the discovery of the firearm, which was observable in plain view when the defendant exited the vehicle." The trial court further found that, "assuming for the sake of argument" that Davis had been subjected to custodial interrogation for purposes of *Miranda*, "the officers elicited no statements subject to suppression."

At trial, in addition to the officers' testimony, the Commonwealth introduced a certified prior conviction for malicious wounding and a certificate of analysis revealing the gun was an operable firearm. Davis exercised his right not to present evidence but made a motion to strike, again arguing the officers "did not have a reason to ask [Davis] to step out from the vehicle" based on the information available at that point. Therefore, Davis asked the trial court to find him not guilty of the offense. The Commonwealth responded, "Judge, it's turned into a DUI investigation. . . . They had every right to approach to see what [was] going on."

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The trial court found that the officers' actions were justified if "[f]or no other reason than under the community caretaker" doctrine and that the officers had "a right to investigate to see if the person is asleep, alive, or under a health distress." The trial court concluded the evidence before it proved that Davis possessed the firearm and convicted him. This appeal followed.

## II.  ANALYSIS

As an initial matter, the Commonwealth asserts Davis failed to properly preserve his Fourth Amendment argument for appeal. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."). Davis acknowledges he "focused on a *Miranda* violation at his Motion to Suppress hearing," but maintains that, because the trial court concluded this was a valid stop, it effectively ruled "on the Fourth Amendment." Davis asks this Court to apply the ends of justice exception to Rule 5A:18 if we find his argument was not properly preserved in the trial court. Assuming without deciding that Davis adequately preserved his Fourth Amendment arguments with his *Miranda*-focused arguments[4] before the trial court, we find that there was no error, as there was reasonable suspicion for Davis's detention.

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact to an appellate court." *Brown v. Commonwealth*, 68 Va. App. 517, 523 (2018). "On appeal, we state the facts 'in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.'" *Hill v. Commonwealth*, 297 Va. 804, 808 (2019) (quoting *Commonwealth v. White*, 293 Va. 411, 413 (2017)). "This standard requires us 'to give due weight to inferences drawn from those facts by resident judges and local

---

[4] It is undisputed that Davis has abandoned his *Miranda* arguments on appeal.

- 4 -

law enforcement officers.'" *Id.* (quoting *White*, 293 Va. at 414). We review the trial court's application of the law *de novo*. *Ward v. Commonwealth*, 273 Va. 211, 218 (2007).

"[A] traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Joyce v. Commonwealth*, 72 Va. App. 9, 14 (2020) (alteration in original) (quoting *Mason v. Commonwealth*, 291 Va. 362, 367-68 (2016)). "To justify a traffic stop, officers need only reasonable suspicion," namely, "'a particularized and objective basis for suspecting the particular person stopped' [was] breaking the law" or in need of assistance. *Id.* (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)). "In making reasonable-suspicion determinations, reviewing courts must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Mason*, 291 Va. at 368 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

> The test is not what the officer thought, but rather whether the facts and circumstances apparent to him at the time of the stop were such as to create in the mind of a reasonable officer in the same position that a violation of the law was occurring or was about to occur.

*Id.* "[T]he relevant inquiry" in assessing reasonable suspicion "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Hill*, 297 Va. at 813 (quoting *United States v. Sokolow*, 490 U.S. 1, 10 (1989)).

In this case, when the officers arrived at the scene of an unrelated accident in the early hours of the morning, they found a car parked in the "dead center of the road" with the engine running, the lights on, and the passenger door ajar. Confronted with such peculiar circumstances, the officers reasonably could have suspected that Davis was in distress, as the trial court found. *See McCarthy v. Commonwealth*, 73 Va. App. 630, 640 n.4 (2021) (As relevant here, "the community caretaker exception permits the police to conduct a warrantless search if it is reasonable for them to believe

the search is necessary for . . . protection of the public and the police from physical danger."

(quoting *Knight v. Commonwealth*, 61 Va. App. 297, 306 (2012))).

Furthermore, there was reasonable suspicion that Davis might have been violating traffic safety laws by parking his car in the middle of a street late at night. *See* Code § 46.2-888(A) ("No person shall stop a vehicle in such manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency, an accident, or a mechanical breakdown."). Davis's car was stopped "in the center of the road" so that, "[i]f another vehicle would have came [sic] behind the vehicle, it wouldn't have been able to get around." This plainly provided a reason to investigate why the car was "imped[ing] . . . the use of the highway by others." Code § 46.2-888(A).[5] Under either rationale, it was reasonable for the officers to approach Davis's car and investigate further.

When the officers approached the car, they found Davis asleep in the driver's seat of a running vehicle. Once awakened, Davis was disoriented and lethargic; his eyes were watery and glassy. When asked if he had been drinking, Davis gave conflicting answers in quick succession. Given the circumstances, and based on his training and experience, Henry suspected Davis was operating the car under the influence of alcohol, and therefore asked him to exit. *See, e.g.*, *Sarafin v. Commonwealth*, 288 Va. 320 (2014) (finding that an intoxicated person, even if asleep, is operating his vehicle when he is seated behind the steering wheel with the key in the ignition). Davis was seized when the officers directed him to get out of the car. When viewed objectively through the eyes of trained law enforcement officers, that seizure was supported by the reasonable

---

[5] Even though the trial court did not rely on this rationale, we may nonetheless employ it in affirming the trial court's ruling. *Martinez v. Commonwealth*, 71 Va. App. 318, 332 (2019) ("When the trial court has reached the correct result for the wrong reason, but the record supports the right reason, '[appellate courts] will assign the correct reason and affirm that result.'" (alteration in original) (quoting *Perry v. Commonwealth*, 280 Va. 572, 579 (2010)).

suspicion that Davis might be breaking the law. Thus, Davis was lawfully detained when Smith saw the firearm in plain view in Davis's pocket as he got out of the car.

The totality of the circumstances created a reasonable suspicion that, at the time of the seizure, Davis might be breaking the law, "justifying an investigatory stop." *Mason*, 291 Va. at 371. Thus, the officers were permitted to briefly detain Davis to confirm or dispel their suspicions. *See Branham v. Commonwealth*, 283 Va. 273, 279-80 (2012) ("An officer may briefly detain a person in those circumstances while the officer questions him, tries to identify him and attempts to gather additional information to either dispel or confirm his suspicions."). Therefore, because Davis's detention was lawful, the trial court did not err in denying his motion to suppress.

### III. CONCLUSION

Finding no error in the trial court's ruling, we affirm.

*Affirmed.*