COURT OF APPEALS OF VIRGINIA

Present: Judges Decker, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia


THOMAS REED ROBERTS

v.     Record No. 1265-16-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARLA GRAFF DECKER
DECEMBER 12, 2017


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge Designate

Samantha Offutt Thames, Assistant Public Defender, for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Thomas Reed Roberts appeals his conviction for possessing cocaine in violation of Code

§ 18.2-250, entered upon his conditional plea of guilty. On appeal, he contends that the circuit court

erred by denying his motion to suppress the evidence because the seizure and subsequent search of

his person were unreasonable. We hold that the evidence supports the circuit court's denial of the

motion to suppress, and we affirm the appellant's conviction.

I. BACKGROUND[1]

On the afternoon of November 13, 2015, Officer Christopher Duane of the City of

Richmond Police Department attended roll call at the beginning of his shift. There he viewed a

presentation that included a description and photograph of a Chesterfield County robbery

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In reviewing an appeal of the denial of a motion to suppress, the appellate court "consider[s] the evidence in the light most favorable to the Commonwealth and accord[s] the Commonwealth the benefit of all inferences fairly deducible from the evidence." Mason v. Commonwealth, 291 Va. 362, 367, 786 S.E.2d 148, 151 (2016).

suspect. After the briefing, Duane went on patrol in uniform and in a marked police vehicle. At about 4:15 p.m., Officer Duane was "performing static patrol" sitting in his police car in the parking lot of a motel located in a "[v]ery" high crime area. He watched the appellant leave the motel parking lot "briefly" and then "[come] back onto the property."

Duane initially noticed the appellant because he "looked just like the picture" that Duane had seen of the robbery suspect forty-five minutes earlier. The suspect was a "white male," in his twenties, with short hair and "extensive" tattoos, which were located on his neck but not his face.[2] The robbery had occurred in Chesterfield County, and the county line was two minutes from the motel by car. Additionally, Officer Duane thought that the appellant could be trespassing on motel property, which had a single entrance and was surrounded by a wall. Duane testified that the property was posted with "numerous *No Trespassing* signs," including a large one at the motel's only entrance. According to Officer Duane, he had seen the appellant walk by the entrance several times.[3]

When the appellant returned to the motel property shortly after Duane's initial observation of him, he knocked on the door of one of the rooms for about ten seconds, but no one responded. Officer Duane was sitting in his police car about eight feet from the room at the time. Without leaving the car, Duane asked the appellant if he was staying at the motel and

[2] The record does not include a description of the appellant's appearance either at the motion hearing or upon his arrest. Counsel did not argue to the circuit court that the appellant did not resemble the suspect. She contended only that the description was inadequate to permit a lawful seizure.

[3] Google "Street View" photographs of the motel introduced into evidence by the appellant show the entrance and wall but do not show any "no trespassing" signs. Although the photos were taken about five months before Duane's encounter with the appellant, Duane responded affirmatively when asked if the photos provided a "fair and accurate depiction of what the [motel] look[ed] like on that day." However, he was not specifically asked about the fact that "no trespassing" signs were not visible in the photos. Additionally, after viewing the photos, he again confirmed the presence of "numerous *No Trespassing* signs" on the motel property.

whether he had any identification. The appellant responded "no" to both questions.[4] Duane then got out of his car with a notepad in his hand to get more information, and the appellant "took off sprinting." Duane, who believed that the appellant was a robbery suspect and might have been trespassing, pursued him. After a ninety-second chase, in which the appellant "took multiple turns," he then "finally fell." The officer handcuffed him and pulled him to his feet.

Officer Duane saw that the appellant was "clutch[ing]" a "folded" "paper lottery ticket" in his hand. The officer described the item as "[f]airly small" and "[m]arble sized." Duane had been a police officer for over four years and had made between thirty and forty narcotics arrests. From his training and experience, he knew that people "take the long rectangular lottery tickets," "tear them up into little squares," "put a small amount of [drugs] into that paper square," and "then fold it up." Duane confirmed in his testimony that "the manner in which" he was "familiar with narcotics being packaged" was "the same manner [in] which" he "found" the lottery ticket in the appellant's hand. Additionally, Duane testified that he immediately recognized the folded ticket as this "extremely common" method of packaging illegal drugs. As Officer Duane retrieved and opened the paper, the appellant "simultaneously" and "[s]pontaneously" said, "It's just one hit." Duane testified that the term "hit" referred to a small amount of narcotics for personal use. Once Duane opened the paper, he saw several pieces of off-white rock in the ticket, which later analysis identified as cocaine.

"[W]ithin a couple [of] minutes" from the time that Duane took the appellant into custody, he was able to check the appellant's identifying information in two police databases.

---

[4] The appellant argues that he told the officer that he was at the motel to visit his cousin. However, no evidence in the record supports this assertion. The appellant did not testify at the suppression hearing, and Officer Duane indicated on cross-examination that he did not recall the appellant making such a statement.

Upon doing so, he learned that the appellant was not the robbery suspect wanted in Chesterfield but that there were several outstanding felony warrants for the appellant's arrest.[5]

At the close of the evidence at the suppression hearing, the appellant argued that the encounter was not consensual and that the officer lacked reasonable suspicion to detain him. He further argued that the Commonwealth did not prove an exception to the warrant requirement necessary to justify the search of the appellant's hand and lottery ticket. The Commonwealth responded that the officer developed first reasonable suspicion to detain the appellant and then probable cause to seize the folded lottery ticket. The judge denied the appellant's motion to suppress, expressly declining to set out his reasoning.

The appellant entered a conditional guilty plea to the charge of possessing cocaine, reserving the right to appeal the denial of his motion to suppress. Consistent with the plea, the court convicted him and sentenced him to five years of incarceration, with four years, six months, one day suspended.

## II. ANALYSIS

The appellant argues that he was seized when Officer Duane first approached him outside the motel room. He further contends that he was under arrest when the officer placed him in handcuffs and that the arrest was not supported by probable cause. Finally, the appellant suggests that the search of the item in his hand was unreasonable under the Fourth Amendment to the United States Constitution because it was not "readily apparent" that the object was "illegal" and no other exception to the warrant requirement applied.

---

[5] The appellant argues on brief that the testimony about the existence of the outstanding warrants was stricken. However, the record, viewed under the proper standard, does not support this assertion. No testimony was stricken, and it appears that the circuit court treated the appellant's objection as covering only the *nature* of the felonies, not the existence of the warrants themselves. See, e.g., M.G. v. Albemarle Cty. Dep't of Soc. Servs., 41 Va. App. 170, 189 n.10, 583 S.E.2d 761, 770 n.10 (2003) (holding that testimony objected to but not stricken is part of the record for purposes of appeal).

In the circuit court, the Commonwealth bears the burden of proving the validity of a warrantless search and seizure. See Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003). On appeal, however, the appellant must show that the circuit court committed reversible error in denying the motion to suppress the evidence. Id. "An accused's claim that evidence was seized in violation of the Fourth Amendment . . . presents a mixed question of law and fact that [the appellate court] review[s] *de novo* on appeal." Grandison v. Commonwealth, 274 Va. 316, 320, 645 S.E.2d 298, 300 (2007). In evaluating such claims, the Court is "bound by the [circuit] court's findings of historical fact unless 'plainly wrong' or without evidence to support them" and "give[s] due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). The appellate court "independently determine[s] whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Whitfield, 265 Va. at 361, 576 S.E.2d at 464.

### A. Contact Outside the Motel Room

Not every encounter between a police officer and a private citizen is a seizure. Florida v. Bostick, 501 U.S. 429, 434 (1991). "The Fourth Amendment does not require any level of suspicion to justify non-coercive questioning by officers, including a request for identification." Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012). Such a request, made in a public place, "generally does not constitute a Fourth Amendment seizure." McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 546 (2001). From a legal perspective, a seizure occurs only when the person is either "physically restrained" or "submit[s] to a show of authority." Beasley v. Commonwealth, 60 Va. App. 381, 390, 728 S.E.2d 499, 503 (2012) (quoting McGee, 25 Va. App. at 199, 487 S.E.2d at 262). The overarching question is "whether a reasonable person would feel free to decline the officer['s] requests or otherwise terminate the

encounter." <u>Bostick</u>, 501 U.S. at 436. This "reasonable person" test "presupposes an innocent person." <u>Id.</u> at 438 (emphasis omitted). Factors relevant in determining whether a seizure has occurred include the number of officers compared to citizens, whether an officer displayed a weapon or engaged in physical contact with the citizen, whether an officer used "language or tone of voice compelling compliance," and whether the citizen was told that he was "free to leave." <u>Harris v. Commonwealth</u>, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003).

Here, the evidence establishes that when Officer Duane first saw the appellant, Duane was sitting in his police car, which was parked in the motel parking lot in the late afternoon. The officer watched as the appellant left the parking lot on foot briefly and then returned. He then continued to watch the appellant from a distance of about eight feet as the appellant knocked on the door of a motel room. From that same location, still seated in his police car, Duane asked whether the appellant was staying at the motel and whether he had any identification. The appellant responded "no" to both questions. As the officer got out of his car with a notepad in hand to request identifying information from the appellant, the appellant "took off sprinting."

No evidence in the record indicates that the officer, who was alone, used a tone of voice suggesting that the appellant was compelled to respond to his questions; drew his weapon; or indicated in any other way to the appellant that he was not free to leave. Accordingly, the evidence supports a finding that Officer Duane's brief encounter with the appellant on the motel property before the appellant ran was consensual and not a seizure.[6]

---

[6] Additionally, even if Officer Duane engaged in a show of authority indicating an *attempted* seizure, when a defendant fails to submit to an officer's show of authority, no seizure has occurred for Fourth Amendment purposes. <u>See, e.g.</u>, <u>Beasley</u>, 60 Va. App. at 391-92, 728 S.E.2d at 504 (citing <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991)). Here, the appellant's act of running away from Officer Duane, in what the appellant concedes on brief was "headlong flight," establishes that no seizure occurred until the appellant was physically apprehended following his flight.

B.  Post-Flight Detention and Handcuffing of the Appellant

A police officer may briefly detain a suspect for the purpose of investigation if he has a "reasonable, articulable suspicion" of unlawful conduct.  Jones v. Commonwealth, 279 Va. 665, 673, 691 S.E.2d 801, 805 (2010).  More specifically, if "articulable facts support[] a reasonable suspicion" of such conduct, an officer may stop that person "briefly while attempting to obtain additional information."  Sidney v. Commonwealth, 280 Va. 517, 524, 702 S.E.2d 124, 128-29 (2010) (quoting Hayes v. Florida, 470 U.S. 811, 816 (1985)).  The purpose of an investigatory stop or detention is "to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion."  Davis v. Commonwealth, 35 Va. App. 533, 539, 546 S.E.2d 252, 255 (2001).  "The test is not what the officer thought" but, rather, whether the objective "facts and circumstances apparent to him at the time of the [seizure] were such as to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law [had occurred,] was occurring[,] or was about to occur."  Mason v. Commonwealth, 291 Va. 362, 368, 786 S.E.2d 148, 151 (2016).  Consequently, the officer need not expressly articulate such a suspicion as long as the record contains objective facts to support it.  See id. at 369-70, 786 S.E.2d at 152.

Here, the officer had reasonable suspicion to investigate whether the appellant was a robbery suspect.  Duane testified that the motel was only a two-minute drive from Chesterfield County and that the appellant looked "just like" a photograph of a robbery suspect from Chesterfield whose photo he had seen at roll call less than an hour earlier.  The officer described the suspect as a "white male," in his twenties, who had short hair and "extensive" tattoos on his neck.  The law is clear that "[i]f a person matches the physical description of a criminal suspect, the police have reasonable suspicion to effect [an investigatory] stop of that individual."  Brown v. Commonwealth, 33 Va. App. 296, 307, 533 S.E.2d 4, 9 (2000); see Jones v. Commonwealth,

230 Va. 14, 18, 334 S.E.2d 536, 539 (1985). Additionally, when the officer asked the appellant if he had any identification, the appellant said he did not. When Duane attempted to approach him on foot to investigate further, the appellant ran from the officer in "headlong flight." See Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("Headlong flight . . . is the consummate act of evasion . . . ."). This evidence was more than sufficient to permit the officer to seize and detain the appellant briefly to determine whether he was the robbery suspect.

The evidence also supported a brief detention of the appellant to investigate the offense of trespassing. Cf. McGuire v. Commonwealth, 31 Va. App. 584, 596, 525 S.E.2d 43, 49 (2000) (holding that probable cause existed to arrest the defendant based on two distinct offenses). Officer Duane testified that the appellant had walked past a large no-trespassing sign on the motel property several times before the officer approached him. The appellant admitted to the officer that he was not staying at the motel, which was located in a high crime area. Further, when Duane got out of his car to approach the appellant on foot, the appellant immediately fled. These circumstances provided the officer, in light of his training and experience, with reasonable suspicion to detain the appellant briefly to investigate whether he was trespassing in violation of Code § 18.2-119. See, e.g., Whitfield, 265 Va. at 361-62, 576 S.E.2d at 465 (holding that where a defendant was seen near an abandoned building late at night in a high crime area and fled when approached by the police, "[t]he characteristics of the area and the defendant's conduct, including his unprovoked flight, justified the stop[]").

The appellant's arguments challenging the officer's testimony that he looked "just like" the robbery suspect and that no-trespassing signs were posted at the motel were attacks on the officer's credibility. Any questions regarding that credibility were resolved in the Commonwealth's favor when the circuit court denied the motion to suppress. See, e.g., Parham v. Commonwealth, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015). No evidence in the

record establishes that the resolution of these factual findings in the Commonwealth's favor was plainly wrong. Additionally, any defense that the appellant might have had to the crime of trespassing did not deprive the officer of reasonable suspicion to investigate whether the appellant might be committing the offense. See Raab v. Commonwealth, 50 Va. App. 577, 581-82, 652 S.E.2d 144, 147 (2007) (*en banc*).

Finally, the fact that Officer Duane placed the appellant in handcuffs during the detention did not convert the seizure into an arrest. See Dixon v. Commonwealth, 270 Va. 34, 40-41, 613 S.E.2d 398, 401 (2005). Even "[b]rief, complete deprivations of a suspect's liberty, *including handcuffing*, 'do not convert [an investigative stop] into an arrest so long as the methods of restraint used are reasonable [under] the circumstances.'" Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993) (emphasis added) (quoting United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989)), adopted upon reh'g en banc, 18 Va. App. 454, 455, 444 S.E.2d 275, 276 (1994). Here, the officer was alone in a high crime area as he investigated whether the appellant was a robbery suspect or a trespasser. The appellant had already fled before the officer could complete the purpose of his initial encounter with the appellant. In light of the appellant's flight and the presence of reasonable suspicion for a brief detention, the use of handcuffs was an entirely reasonable way to effect the temporary seizure.

C. Seizure and Examination of the Folded Lottery Ticket

The appellant contests the officer's seizure and search of the folded lottery ticket, arguing it was a legal item with a legitimate use and, accordingly, that Officer Duane lacked probable cause to search the folded ticket. He contends that the holding in Grandison, 274 Va. 316, 645 S.E.2d 298, in which the Supreme Court of Virginia held that the search of a uniquely folded dollar bill was unreasonable, dictates this result.

A law enforcement officer has probable cause for a warrantless search "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in the place to be searched. Ornelas v. United States, 517 U.S. 690, 696 (1996). In conducting this assessment, "courts should focus upon 'what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control.'" Buhrman v. Commonwealth, 275 Va. 501, 505, 659 S.E.2d 325, 327 (2008) (quoting Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976)). Although probable cause is a higher standard than reasonable suspicion, it does not "demand any showing that such a belief be correct" or even "more likely true than false." Slayton v. Commonwealth, 41 Va. App. 101, 106, 582 S.E.2d 448, 450 (2003) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). An investigating officer "deal[s] [not] with hard certainties, but with probabilities," and is permitted to make "common-sense conclusions about human behavior." Brown, 460 U.S. at 742 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

In Grandison, the Court held that the method of folding of a dollar bill multiple times in "apothecary" style or some other atypical way, combined with a defendant's presence in a high crime area and the knowledge of the investigating officer that people sometimes carry drugs in dollar bills folded in such a fashion, was insufficient to provide probable cause to believe the bill contained drugs. Grandison, 274 Va. at 318, 321, 645 S.E.2d at 299-301. The officers in Grandison found the folded bill "protruding" from the defendant's pocket when they encountered him as a passenger during the stop of a vehicle reported stolen and frisked him for safety reasons. Id. at 318-19, 645 S.E.2d at 299. No evidence in Grandison indicated that the defendant attempted to flee or engaged in any other sort of furtive behavior during his chance encounter with the police. See id.

In the appellant's case, by contrast, the appellant was not merely a bystander during Officer Duane's stop of another individual. The appellant looked "just like" a suspect in a recent robbery and may have been trespassing on motel property in a high crime area. Further, unlike in Grandison, the appellant engaged in what he concedes was "headlong flight" from the officer when the officer attempted to approach him alone and on foot to ask a few questions. "Headlong flight . . . is the consummate act of evasion" and is "certainly suggestive" of "wrongdoing." Wardlow, 528 U.S. at 124. Accordingly, the fact that the appellant engaged in headlong flight while clutching the marble-sized folded lottery ticket significantly distinguishes this case from Grandison. See Hollis, 216 Va. at 877, 223 S.E.2d at 889 (upholding a warrantless search where an officer saw the defendant with a cigarette that appeared to be hand-rolled, which the officer believed contained marijuana, and the defendant "furtively" tried to hide the item).

Additionally, the evidence supports a finding that before Officer Duane searched the item that the appellant was clutching in his hand, he could see that it was a *piece* of a folded lottery ticket rather than a *whole* ticket. Officer Duane testified expressly that the manner of packaging of the item he found in the appellant's hand was "the same manner" of packaging as the lottery tickets that he had previously seen used to transport drugs—which he had testified were *pieces* of tickets. He also testified that the packaging in the appellant's hand was marble sized. Consequently, a reasonable inference from the evidence is that the item in the appellant's hand was also a *piece* of a lottery ticket. See McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (requiring an appellate court to view not only the evidence but also all reasonable inferences flowing from the evidence in the light most favorable to the Commonwealth). Possession of merely a *piece* of a lottery ticket negated the premise that it was possessed for its intended legal purpose of winning money and increased the likelihood that it was being used for an illegal purpose, adding to the probable cause calculus. Cf. Ruffin v. Commonwealth, 13 Va. App. 206, 207-08, 211, 409

- 11 -

S.E.2d 177, 178, 180 (1991) ("The object [inside the defendant's sock] detected by [the officer during a weapons frisk] was not a facially innocent vessel of a type employed by law-abiding citizens, on a daily basis, for legitimate uses. It was, on the contrary, an unnatural mass, carried in a manner of concealment, consistent with the transportation of illegal drugs.").

Accordingly, the evidence provided probable cause to believe the appellant had contraband in his hand, which permitted Officer Duane to open the piece of the ticket and examine its contents. See, e.g., Hollis, 216 Va. at 877, 223 S.E.2d at 889. When he did so, his view of the substance inside—coupled with the appellant's spontaneous utterance, "It's just one hit," as well as the officer's training and experience—provided probable cause for the appellant's arrest.

### III. CONCLUSION

The evidence in the record, viewed under the proper standard, supports a ruling that the initial encounter was not a seizure. Additionally, it proves that the seizure that occurred after the appellant's flight was supported by reasonable suspicion of criminal activity. Finally, the evidence establishes that the officer's unfolding of the portion of the lottery ticket in the appellant's hand was supported by probable cause to believe it contained drugs. Consequently, the circuit court's denial of the appellant's motion to suppress was not error and we affirm the appellant's conviction.

Affirmed.