# COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Malveaux and Friedman
Argued at Richmond, Virginia

NASHWAN ALI GUBARI

v.        Record No. 0416-21-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
CHIEF JUDGE MARLA GRAFF DECKER
JANUARY 11, 2022

FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
W. Allan Sharrett, Judge

Jennifer A. Quezada (Miriam R. Airington-Fisher; Bianca A. White;
Airington Law, PLLC, on briefs), for appellant.

Liam A. Curry, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Nashwan Ali Gubari appeals his conviction for a felony violation of Code § 58.1-1017,

which proscribes the possession or transport of 500 or more packages of unstamped cigarettes "for

the purpose of evading the payment of the taxes on such products."  On appeal, he argues that the

circuit court erred by denying his motion to suppress the cigarettes and concluding that the evidence

was sufficient to support his conviction.  We hold that the court did not err in determining that

reasonable suspicion supported the ongoing detention that led to discovery of the cigarettes and

denying the motion to suppress on that basis.  We further conclude that the appellant failed to

preserve his challenge to the sufficiency of the evidence for appeal.  As a result, the appellant's

conviction is affirmed.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND[1]

On June 25, 2019, Special Agent Matthew Hand, a sergeant with the Virginia Department of State Police, encountered the appellant while on patrol in Greensville County. Hand initiated a traffic stop of a vehicle traveling north on Interstate 95 that appeared to be in violation of window tint laws, and he radioed for backup. The car was "slow to stop." It pulled to the side of the highway at 1:14 p.m. Hand walked up to the passenger side of the car, but due to the dark window tint, he could not see into the back seat. He knocked on the back window, and the driver rolled down the electric window, allowing him to see luggage in that area.

Special Agent Hand spoke with the driver through the front passenger-side window. The driver was "nervous" and had "a scared look on his face." The appellant was the front seat passenger and appeared to have just awakened. Both men were "breathing heavy [sic]," and "the pulse in . . . their necks" was "visible" and "rapid[]."

Hand identified himself to the driver, explained the reason for the stop, and asked for his license and registration. The driver provided an identification card issued by the state of New York. Special Agent Hand then asked the driver to accompany him back to his vehicle, where he "ran" the driver's information and learned that he did not have a valid license. The driver told Hand that he was driving because the appellant, his cousin, was tired. The driver also reported that they had gone to South Carolina to visit his daughter and had arrived there at about 2:00 a.m. on the day of the traffic stop. He further stated that they had slept until 7:00 or 8:00 a.m. and departed South Carolina at 9:00 a.m. Hand thought it odd that the men had traveled such a long distance to spend only about an hour with the driver's daughter.

---

[1] "[W]hen reviewing a challenge to the sufficiency of the evidence to support a conviction, an appellate court considers the evidence in the light most favorable to the Commonwealth, the prevailing party below . . . ." *Jiddou v. Commonwealth*, 71 Va. App. 353, 359 (2019) (quoting *Marshall v. Commonwealth*, 69 Va. App. 648, 652-53 (2019)).

At 1:18 p.m., four minutes after the stop began, Virginia State Trooper Austin Albright arrived at the scene with his narcotics canine. At that same time, Special Agent Hand checked the window tint on the car, which exceeded the amount allowed by law. He asked the appellant, who remained in the car, for his driver's license. The appellant provided his license. Outside the presence of the driver, the appellant told Hand that the men were traveling from South Carolina, where they had arrived the previous day. This information contradicted the driver's statement that the men had arrived in South Carolina at 2:00 a.m. that same day. While interacting with the appellant, Hand saw "green, dry plant material" on the car's center console. When Hand asked the appellant what the material was, he "brushed it off with his hand" and "showed [the agent] some cookie crumb or something" instead. Hand believed, based on his training and experience, that the green substance was khat, a Schedule 1 narcotic. The agent described khat as a stimulant that people "chew . . . to keep them awake while they're traveling long distances on the interstate." At 1:21 p.m., Special Agent Hand "ran" the appellant's New York driver's license, which "came back not valid." Because neither of the car's occupants had a valid driver's license, Hand knew he would not be "let[ting] them drive away."

At some point during the traffic stop, Hand learned that the car was a rental vehicle and saw the rental agreement bearing the appellant's name. He further noted that the agreement had been in effect since January of that year. Hand calculated that at the stated rate of $300 per week, the appellant would have paid $7,200 to rent the car during that six-month period, which he thought seemed "excessive." He also knew based on his training and experience that rental car companies do not tint the windows of their vehicles beyond the legal limit but that criminals do so in order to conceal contraband from law enforcement.

At 1:23 p.m., nine minutes after the traffic stop began, Special Agent Hand gave the driver a verbal warning for the excessive window tint and driving without a license. He also

returned both the driver's and the appellant's identification to the driver, along with the vehicle registration. He told the driver, outside the presence of the appellant, that he was free to go. Special Agent Hand testified, however, that he did not actually plan to let the driver or the appellant leave the scene in the vehicle, due to "all the criminal indicators that [he] observed [during] the traffic stop."

Hand opted to "tr[y] to conduct a consensual encounter" with the driver, who agreed to speak with him. Hand asked the driver if he could search the car. The driver responded that Hand would have to ask the appellant because he was the person who had rented it. Hand instead asked Trooper Albright, who was already on the scene, to "run [his drug] dog around the vehicle."

At 1:25 p.m., eleven minutes after the stop was initiated, Trooper Albright had his trained narcotics dog sniff the exterior of the rental car. The dog was trained to "alert" to multiple types of illegal narcotics, including marijuana, as well as to "the residue" of such drugs. Albright explained that although the dog was not trained to detect khat, that substance, like marijuana, contains a "high level of THC" and could also cause the dog to alert. By 1:28 p.m., the dog "alerted to the odor of narcotics coming from" the car.

As a result of the dog's alert, Hand searched the car. He opened the trunk, which was "completely full" of cigarette cartons. Hand also found cigarette cartons on the rear floorboard and under the driver's and passenger's seats, concealed beneath the floor mats and some black sheets. Finally, Special Agent Hand located "what appeared to be marijuana residue" on the driver's side floorboard. Based on the presence of the significant amount of contraband, another trooper drove the rental vehicle to the area office of the State Police. Hand later counted 467 cartons of cigarettes, for a total of 4,670 packs of cigarettes, none of which "b[ore] a Virginia tax stamp" proving payment of the state's excise tax.

The appellant was indicted for cigarette trafficking. Prior to trial, he filed a motion to suppress the cigarettes, alleging that the dog sniff of the vehicle violated *Rodriguez v. United States*, 575 U.S. 348 (2015), because it occurred after the "mission" of the stop had concluded.

The trial court heard the suppression motion and trial evidence together. In addition to the evidence regarding the stop and search, Special Agent Hand testified that his department's policy regarding a car stopped on the interstate was to inventory and tow it if none of the occupants was licensed to drive it from the scene.

Detective Robert Matson, of the Henrico County Police Department, testified as an expert witness in the area of illegal cigarette trafficking. Due to the absence of excise tax stamps on the seized cigarettes, he opined that they originated in North Carolina or North Dakota, the only states not requiring such stamps. He noted that due to differences in tax rates, buying cigarettes in North Carolina and selling them in New York would allow for "a significant profit." Matson further opined that a northbound rental vehicle on a two-day trip carrying 467 cartons of unstamped cigarettes "from Carolina" was "consistent with cigarette trafficking." He noted that using a rental vehicle protects traffickers from having a personal vehicle seized if detected.

After the evidence had been presented, the parties argued the motion to suppress and filed legal memoranda.[2] The arguments included discussion of reasonable suspicion, probable cause, and inevitable discovery. At a subsequent hearing, the trial court denied the motion. Indicating acceptance of Special Agent Hand's testimony, it specifically ruled that *Rodriguez* did not apply because the objective evidence established that the car's occupants were not free to leave and Hand had reasonable suspicion to continue the stop. The dog sniff occurred before the officers' "business" had been concluded and, thus, did not impermissibly extend the stop. Both men were unlicensed and could not drive the car from the scene, so it had to be removed from the shoulder

---

[2] The appellant opted not to present any evidence.

of the interstate in some other way. Based on the facts before it, the court also reasoned that an inventory search of the vehicle would be required before the towing. As a result, it held that the contraband found in the search following the dog's alert would also have inevitably been discovered during an inventory search.[3]

After denying the suppression motion, the court found the appellant guilty of cigarette trafficking. It sentenced him to five years in prison with four years six months suspended, as well as payment of restitution of $2,500.

## II. ANALYSIS

The appellant raises two issues on appeal. He argues that the trial court erred by denying his motion to suppress. He also contends that it incorrectly concluded that the evidence is sufficient to support his conviction.

## A. Motion to Suppress

The challenge to the denial of the motion to suppress rests on two grounds. The appellant suggests that neither reasonable suspicion nor inevitable discovery, the alternative bases upon which the trial court relied, supports the ruling. The Court first considers whether reasonable suspicion validates the challenged portion of the stop.

On appeal of a trial court's ruling denying a motion to suppress, the appellate court "give[s] deference to the factual findings of the circuit court" but "independently determine[s] whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)). Consequently, the appellate court defers to any explicit factual findings and views the remaining evidence "in the light most favorable to the

---

[3] The judge expressly refrained from ruling on whether the police had probable cause to conduct a warrantless vehicle search *prior* to the dog sniff.

- 6 -

Commonwealth," which includes "giving it the benefit of any reasonable inferences" from that evidence. *See Hill v. Commonwealth*, 297 Va. 804, 808 (2019) (quoting *Commonwealth v. White*, 293 Va. 411, 413 (2017)). But whether the facts establish a Fourth Amendment violation is reviewed *de novo*. *See Ornelas v. United States*, 517 U.S. 690, 697-99 (1996) (analyzing reasonable suspicion and probable cause). We consider whether reasonable suspicion supports the challenged portion of the detention in light of these well-established principles.

The appellant contends that once Special Agent Hand told the driver that he was free to leave, the agent lacked a basis under *Rodriguez* for the "prolonged" detention that included the dog sniff.[4] The appellant misconstrues the mandate of *Rodriguez*. In *Rodriguez*, the United States Supreme Court held that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (citation omitted) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Beyond that blanket statement, the Court made clear that an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop," but "he may not do so in a way that prolongs the stop, absent the [independent] reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 355; *see id.* at 356 (recognizing that "a dog sniff . . . is not an ordinary incident of a traffic stop"). "If an officer develops independent reasonable suspicion . . . that an occupant has committed an additional traffic offense or crime," the holding in *Rodriguez* permits the officer to "extend the stop for a reasonable amount of time in order to confirm or dispel that new suspicion." *Williams v. Commonwealth*, 71 Va. App. 462, 482 (2020); *see Rodriguez*, 575 U.S. at 355. The question here then becomes whether Special Agent Hand had independent reasonable suspicion at the time that the narcotics dog was deployed to sniff the car.

---

[4] The appellant does not challenge the lawfulness of the initial stop.

- 7 -

Reasonable suspicion requires proof of "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). "[A]n officer's reliance on a mere '"hunch"' is insufficient" to provide the reasonable suspicion necessary to support or continue a stop. *See id.* at 274 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Nonetheless, the "process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* at 273 (quoting *Cortez*, 449 U.S. at 418). The relevant assessment involves the "totality of the circumstances"—"'the whole picture'" rather than a "'technical dissection' of the [supporting] factors." *Curley v. Commonwealth*, 295 Va. 616, 623 (2018) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018)).

"The degree of certitude required for '"reasonable suspicion" is "considerably less than proof of wrongdoing by a preponderance of the evidence[]" and "obviously less demanding than that for probable cause."'" *Hill*, 297 Va. at 815 (emphasis omitted) (quoting *Perry v. Commonwealth*, 280 Va. 572, 581 (2010)). Manifestly, it "need not rule out the possibility of innocent conduct." *Id.* at 815 n.6 (quoting *Navarette v. California*, 572 U.S. 393, 403 (2014)). Additionally, for purposes of evaluating reasonable suspicion, "the officer's subjective thoughts are irrelevant. The Fourth Amendment imposes a standard of objective reasonableness." *Mason v. Commonwealth*, 291 Va. 362, 368 (2016) (citation omitted); *see id.* at 369. In other words, the relevant analysis is based on the meaning of the facts viewed "objectively through the eyes of a reasonable police officer with the knowledge, training[,] and experience of the investigating

- 8 -

officer."[5] *Jones v. Commonwealth*, 52 Va. App. 548, 560 (2008) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 422 (2003), *aff'd on other grounds*, 267 Va. 291 (2004)); *see Armstead v. Commonwealth*, 56 Va. App. 569, 579 n.7 (2010).

Here, the evidence, viewed objectively, provided Special Agent Hand with independent reasonable suspicion to justify continuing the detention of the appellant and his rental vehicle to investigate whether he possessed the controlled substance khat or was using the vehicle to traffic contraband. Hand's initial basis for stopping the vehicle was his suspicion that it was in violation of window tint laws. Additionally, however, he knew that criminals often equip vehicles with illegal window tint to conceal contraband from law enforcement. Hand noted that when he activated his emergency lights to initiate the traffic stop, the car was slow to pull over, and when he first approached the car on foot, the driver was "nervous" and had "a scared look on his face." The appellant and the driver were breathing heavily, and "the pulse in . . . their necks" was "visible" and "rapid[]." *See McCain v. Commonwealth*, 275 Va. 546, 554 (2008) (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).

During the course of the stop, Special Agent Hand saw on the center console what he suspected was khat, an illegal narcotic. He knew that traffickers sometimes use khat to remain awake while driving long distances. When he asked the appellant about the obvious plant material, the appellant physically brushed it aside, picked up a miniscule amount of some other

---

[5] Neither the officer's nor the detainee's subjective view of the circumstances has any direct legal relevance in a reasonable suspicion analysis. *See Mason*, 291 Va. at 368 (recognizing that reasonable suspicion requires an objective assessment of the facts); *cf. United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990) (observing that "a defense based on the *offender's* perception of the circumstances is not sufficient to defeat probable cause [or reasonable suspicion], because [both are] based on what is known to the . . . officer at the time, not what goes on in the offender's mind" (emphasis added)). The detainee's subjective understanding may be relevant in determining whether an ongoing detention is justified by *consent*, but as long as reasonable suspicion continues to exist under an objective view of the facts, reasonable suspicion justifies the stop and consent is irrelevant. *See Harris v. Commonwealth*, 266 Va. 28, 33 (2003).

substance, and gave an evasive response regarding cookie crumbs. *See id.* Hand also confirmed during the stop that the degree of window tint exceeded the legal limit.[6]

Both occupants of the vehicle produced identification issued by the New York Department of Motor Vehicles but lacked valid driver's licenses. They claimed to have been visiting family in South Carolina. Yet they provided conflicting information regarding when they arrived, and the driver's rendition was that the "visit" lasted only an hour. Additionally, the appellant's statement regarding their itinerary appeared to be a lie intended to obscure the fact that their stay was so short. Hand also learned during the stop that the car was rented by the appellant and had been in his possession for about six months. Based on the terms of the rental contract, the special agent calculated that the appellant had paid $7,200 in rental fees during that time, which seemed "excessive." This information provided further support for Hand's belief that the appellant, not the rental company, had applied the window tint and had done so to obscure the contents of the vehicle from law enforcement. Finally, the record established that the use of a rental vehicle was evidence of possible illegal trafficking because it allowed the renter to protect a personal vehicle from seizure if the criminal activity was detected.

These facts, viewed together, provided reasonable suspicion permitting the special agent to briefly extend the detention of the appellant and the rental car for additional investigation to confirm or dispel his suspicion that it was carrying illegal contraband. *See Adams v. Williams*, 407 U.S. 143, 145 (1972) ("The Fourth Amendment does not require a policeman who lacks . . . probable cause to arrest to simply shrug his shoulders . . . . *Terry* recognizes that it may be the

---

[6] Regardless of the fact that Hand only issued a verbal warning to the driver about the illegal tint, the tint was a factor that the agent was entitled to consider in assessing whether the men might be engaged in other criminal activity. *See Hairston v. Commonwealth*, 67 Va. App. 552, 563 (2017) ("[I]t it irrelevant whether the accused is . . . charged with[] the offense that provided [reasonable suspicion or] probable cause for . . . [the] seizure in the first instance."); *see also United States v. Torres-Ramos*, 536 F.3d 542, 552 (6th Cir. 2008) (considering window tint in the totality analysis for reasonable suspicion).

essence of good police work to adopt an intermediate response."), *quoted in Simmons v. Commonwealth*, 217 Va. 552, 554 (1977). The trial court did not err by concluding that the circumstances permitted extending the stop for the brief additional time necessary to conduct the dog sniff, which produced the canine's alert for narcotics. The alert, in turn, justified the vehicle search and discovery of the contraband.

Consequently, the evidence supports the conclusion that the trial court's denial of the appellant's motion to suppress was not error. In light of our conclusion that independent reasonable suspicion supports the denial of the motion to suppress, we do not reach the appellant's challenge to the alternative ruling on inevitable discovery or the Commonwealth's related waiver argument. *See, e.g.*, *Watson-Scott v. Commonwealth*, 298 Va. 251, 258 n.2 (2019) (recognizing that an appellate court must decide cases "on the best and narrowest grounds" (quoting *White*, 293 Va. at 419)); *see also Armstead*, 56 Va. App. at 575-76 & n.3 (holding that the constitutionality of the seizure and search rather than the exclusionary rule or procedural bar was the best and narrowest ground for decision), *cited with approval in Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015).

### B. Sufficiency of the Evidence

The appellant challenges the sufficiency of the evidence to prove that he sold, purchased, or possessed cigarettes "for the purpose of evading tax." The Commonwealth argues that he failed to preserve this challenge for appeal.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "Specificity and timeliness undergird the contemporaneous-objection rule . . . [']so that the trial judge . . . know[s] the particular point being made in time to do something about it.'" *Bethea v.*

- 11 -

*Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)); *see Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010) (noting that a "specific, contemporaneous objection" also "gives the opposing party the opportunity to meet the objection" (quoting *Weidman v. Babcock*, 241 Va. 40, 44 (1991))). "To preserve an argument concerning the sufficiency of the evidence in a bench trial, a defendant 'must make a motion to strike at the conclusion of all the evidence, present an appropriate argument in summation, or make a motion to set aside the verdict.'" *Taylor v. Commonwealth*, 58 Va. App. 185, 189 (2011) (quoting *Howard v. Commonwealth*, 21 Va. App. 473, 478 (1995)).

In the instant case, the transcript and conviction order demonstrate that the appellant did not make a motion to strike the evidence or deliver a closing argument in the combined suppression hearing and trial. When the trial court asked whether the appellant intended to make closing argument, the appellant's counsel responded only that he wished to "preserve for the record the issue related to the motion to suppress." The appellant also did not make a post-trial motion to set aside the verdict.

Making a motion to suppress evidence challenges only the *admissibility* of the specific evidence addressed. *See Arrington v. Commonwealth*, 53 Va. App. 635, 642-43 (2009). It does not challenge the *sufficiency* of the evidence as a whole to prove the offense, which only a motion to strike, closing argument, or motion to set aside the verdict can do. *See Taylor*, 58 Va. App. at 189. Accordingly, the appellant failed to preserve his challenge to the sufficiency of the evidence for appeal under Rule 5A:18.

The appellant asks this Court to apply Rule 5A:18's ends-of-justice exception to his failure to challenge the sufficiency of the evidence below. The ends-of-justice exception "is narrow and is to be used sparingly." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (*en banc*) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)). The record must

establish that application of the ends-of-justice exception is necessary to avoid "a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). As a result, to successfully invoke this exception, an appellant must show both that an error has occurred, *id.*, and that it was "clear, substantial and material," *Brown v. Commonwealth*, 279 Va. 210, 219 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 338 (2004)).

In practical terms, to invoke the ends-of-justice exception in the case of a sufficiency challenge, the appellant must provide a record "affirmatively prov[ing]" that he was "convicted for conduct that was not a criminal offense" or "that an element of the offense did not occur." *Redman*, 25 Va. App. at 221-22, *cited with approval in Ali v. Commonwealth*, 280 Va. 665, 671 (2010); *see Jiddou v. Commonwealth*, 71 Va. App. 353, 374 (2019). A mere failure of proof is insufficient to permit application of the exception. *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009). Otherwise, the exception would swallow the rule. *Id.* at 513-14; *see Winslow v. Commonwealth*, 62 Va. App. 539, 546-47 (2013).

The appellant's only articulated challenge on appeal to the sufficiency of the evidence to prove the charged offense is that the record did not eliminate the possibility that he did not knowingly possess the cigarette cartons in the car and was unaware that the taxes on them had not been paid. Specifically with regard to the ends-of-justice exception, he states only that a miscarriage of justice has occurred because "the evidence of his crime is insufficient" and "the Commonwealth failed to affirmatively prove" the elements of the offense. "Arguing that the record is [deficient in or] devoid of evidence of an element does not equate with affirmative proof that an element *did not* occur." *Le v. Commonwealth*, 65 Va. App. 66, 75 (2015) (emphasis added); *see Redman*, 25 Va. App. at 221-22. Accordingly, the appellant has failed to establish a basis to support the exception.

## III.  CONCLUSION

We hold that the trial court did not err in determining that reasonable suspicion independent from the original basis for the stop supported the denial of the appellant's motion to suppress.  We further conclude that the appellant failed to preserve his challenge to the sufficiency of the evidence for appeal under Rule 5A:18 and is not entitled to invoke the ends-of-justice exception.  For these reasons, the appellant's conviction is affirmed.

<u>Affirmed.</u>